# Wahl v. Kentucky Ignition Co.

March 14, 1950.

William H. Field, Judge.

Lawrence S. Grauman and Henry V. B. Denzer for appellant.

Curtis & Curtis for appellee.

MORRIS, COMMISSIONER—Affirming.

Appeal is from a judgment following a directed verdict for the defendant, appellee. The sole question presented is whether or not there was sufficient proof by plaintiff to warrant a submission to the jury. Appellant sought to recover for injuries received when he fell into an elevator shaft on the premises of appellee. The defense was a plea of contributory negligence.

Wahl at the time of his injury was 26 years of age, an apprentice electrician in the employ of the Bernstein Electric Company, where he had been working eight and a half months. His duties in part were to deliver material to and assist the men working on various jobs. The third floor of the building was rented to and used by the Shackelton Piano Company, which had engaged the Bernstein Company to do electrical repair work on the third floor. On September 26, 1947, appellant was delivering materials for use on the job. He went to the first floor where he said the light was very dim, then to

the elevator shaft, and "I looked into the elevator to make sure that it was there. It looked like it was there so I raised the gate and looked again to make sure it was there. I stepped in and fell through space." Asked, "Was it completely lighted when you looked in there, or what was the condition?" Appellant answered, "The condition was very dim; the floor of the elevator is very big; they drive trucks on it. The sides of the elevator are dark red." Asked, "Why did you step in the opening after you raised the gate?" He answered, "Because I saw * * * well it looked like the elevator was there; all I could do was step into it. I did not know it was not there or I would not have stepped in." He fell to the basement and was taken to a hospital. According to his testimony and that of his physician he was severely injured, a partial permanent injury. He was confined to the hospital for about three months. His prior physical condition (including eyesight) was good.

Appellant was asked: "At the time you came to this gate and stepped in, was there any electric light burning at all that you could see in the vicinity of this elevator, either inside or on the outside of the elevator shaft? Ans. No, sir."

On cross-examination the following was developed: "Q. You had used this elevator 20 or 30 times for about two weeks, and knew how to operate it and understood the operation of the elevator? Ans. Yes, sir." He said he had used the elevator on the same day; had operated it from the third floor to the first, giving in detail the operation, and had gone to the Bernstein plant for materials and returned in about fifteen or twenty minutes, reaching appellee's plant at 11:00 or 11:30 a. m.

"Q. You knew that while you were gone just anybody might use the elevator and take it to different floors? A. Yes sir.

"Q. When you got back you did not know whether anybody had used it or not? A. That is right.

"Q. You say it was dark there at the time; too dark for you to see the floor of the elevator or see whether it was there or not? A. Yes sir. It looked like it was there.

"Q. Was it not too dark for you to see whether or

not it was there? (No answer, question repeated.) A. It was a very dim light; not pitch dark; you could not see.

"Q. You could see if it was there? A. Yes sir.

"Q. It was light enough for you to see whether it was there or not? A. Yes sir, and I looked.

It developed that there was a door about 50 feet from the elevator about 12 x 10; asked if the light from the door shined in the elevator, appellant said the light was blocked by a truck that was turning around, "There was some light coming, it was not completely dark."

"Q. You did step in there when the lights were dim and you had a hard time to know whether the elevator was there? A. Yes sir.

"Q. You did not pay any attention to the elevator to know whether there was a light burning on the inside or not? A. I never paid that much attention any time I entered it, because I did not work on the elevator.

"Q. You have seen many automobiles on the first floor? A. On the inside of the building? Yes sir."

Appellant's contention is that the evidence of plaintiff was sufficient to take the case to the jury. Counsel argues that the landlord (the appellee) did not furnish an operator for the elevator; the elevator was not equipped with a sufficient door or gate to protect those using the elevator, or a gate or door that would remain closed while the elevator was not at a particular floor. A cursory reading of the proof will show that there was no evidence to maintain a single one of the charges which were alleged in the petition. Appellant in proof made no reference to any lack of care or any negligence on the part of appellee as to any defect or failure in the respects above named.

Appellant realizing this situation places emphasis on the charge that the elevator shaft was only dimly lighted, and appellant "was justified in thinking that the elevator was at the first floor," so that the person entering could see clearly "what the situation was." Appellant cites many cases which discuss the question of negligence and contributory negligence, particularly in elevator cases. For instance, cases wherein we held negligence, and lack of contributory negligence, where the

shaft door was open and lights were dim. Many of the cases cited are from other jurisdictions, but several of our cases are cited which undoubtedly show that one is not guilty of contributory negligence, or that the proof shows a submittable issue where the injury was caused by defective machinery, failure to provide suitable guards, doors, insufficient lights. See Sabiston's Adm'r v. Otis Elevator Co., 251 Ky. 222, 64 S. W. 2d 588, and cases cited.

Here it is not shown that there had been any artificial lights anywhere in or near the shaft, or that such were necessary or convenient for the use of this large freight elevator, or that such light as was supplied by natural light, or came into the shaft from the upper floors was insufficient for the safety of persons using the elevator. The fact is that a close reading of the proof shows that there was light from the door on the first floor, and that appellant was about to enter the elevator when a truck was in the act of turning around, thus blocking at the time the natural light from the door.

Appellant testified that when he raised the gate and looked, not once but twice to see, he thought the elevator was there. If it was light enough for him to see the elevator, as he testified at one point, or if the light was momentarily cut off by the truck, in each of these instances he took the chance and was guilty of contributory negligence as a matter of law.

We are clearly of the opinion that appellant failed entirely to show any act of negligence or omission of duty which would justify a submission of the case to the jury. It is also clear that appellant's negligence was the proximate cause of his injury. Appellant's testimony is vague, uncertain and speculative, and not of that quality of probative proof as to induce a conviction or an inference that appellee was guilty of negligence. City of Ludlow v. Albers, 253 Ky. 525, 69 S. W. 2d 1051; Gay v. Gay et al., 183 Ky. 238, 209 S. W. 11, and the recent case, Taustine's Ex'rs v. B. & B. Novelty Co., 305 Ky. 514, 204 S. W. 2d 938, and cases cited, which appears to be controlling here.

Being of the opinion that the trial court did not err in directing a verdict for defendant, the judgment is affirmed.